UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JERRY THOMPSON,

    Plaintiff,

v.

CHRISTINA REAGLE *et al.*,

    Defendants.

CAUSE NO. 3:24-CV-25 DRL-AZ

OPINION AND ORDER

Jerry Thompson, a prisoner without a lawyer, filed an amended complaint against eight defendants alleging they violated his right under the Americans with Disabilities Act (ADA) and section 504 of the Rehabilitation Act because he has been housed in a cell at the Indiana State Prison (ISP) that is not handicap-accessible and does not accommodate his physical disability. ECF 6. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Thompson, who is currently housed at ISP, is a 57-year-old inmate who underwent reconstructive right hip surgery due to a gunshot wound and, as a result, has a physical condition called avascular necrosis. ECF 6 at 7. He has three screws in his right

hip and a bullet lodged in his right pelvis, which limits his ability to walk, stand, bend, squat, climb stairs, and maintain balance. *Id*. He has also had reconstructive surgery of his left knee, and a herniated disk removed from his back. *Id*. at 7-8.

Mr. Thompson states he is a qualified individual with a physical disability under the ADA and Wabash Valley Correctional Facility's medical staff classified him with a disability code of "C" when he began his sentence in 2020. *Id*. at 8, 10. He was assigned a wheelchair to accommodate his disability. *Id*. at 10.

In 2020, he was assigned to cell number 307 in P-Housing Unit (PHU) at Wabash, a handicap-accessible cell, which included grab bars, an ADA compliant toilet and sink, and adequate door and cell space to use his wheelchair. *Id*. at 10-11. The shower in PHU was equipped with a shower chair, grab bars, and wheelchair accessible entry, all which complied with ADA and Rehabilitation Act regulations. *Id*. at 11.

In 2021, Mr. Thompson was moved from cell number 307 in PHU to a cell in G-Housing Unit (GHU), which was not handicap-accessible. *Id*. After Wabash staff recognized its error, he was moved back to PHU and housed in cell number 320, a handicap-accessible cell. *Id*.

In August 2022, Mr. Thompson was moved to cell number 307 in C-Housing Unit because he was sanctioned with a disciplinary offense. *Id*. He asserts cell number 307 was not compliant with ADA or Rehabilitation Act regulations because it did not have a handicap-accessible toilet, sink, and desk, or grab bars. *Id*. at 11-12. Because the cell did not have grab bars, he fell while he was transferring himself from his wheelchair to the toilet. *Id*. at 12-13. The fall exacerbated his existing conditions and caused his back, neck,

right hip, and left thumb to be painful. *Id*. at 13. An x-ray showed Mr. Thompson's left thumb had been fractured. *Id*. at 13-14. He was later moved to a handicap-accessible cell and given regular access to shower areas that complied with the ADA and Rehabilitation Act. *Id*. at 14.

In December 2022, Mr. Thompson was transferred from Wabash to ISP by van. *Id*. During the transport, he was handcuffed, chained around his stomach, shackled, and wore a seatbelt for eight hours, which exacerbated his injuries and caused him extreme pain. *Id*. When he arrived at ISP, he was assigned to cell number 105 in D-Housing Unit (DHU), which is not handicap-accessible and does not comply with ADA or Rehabilitation Act regulations. *Id*. at 15. He was later moved to B-Housing Unit (BHU), a unit that is not handicap-accessible. *Id*. Mr. Thompson asserts the cells in BHU do not have grab bars, a handicap-accessible toilet or sink, or adequate floor space to maneuver his wheelchair. *Id*. The shower area does not have a mounted shower chair or a shower mat to keep him from slipping and falling. *Id*.

In January 2023, Mr. Thompson filed a grievance and wrote to Warden Ron Neal asking to be transferred to a facility that would accommodate his disability. *Id*. at 22. He also sent a letter to ADA Coordinator D. Taylor and submitted a request for interview form to Unit Team Manager Pamela Bane asking that he be afforded reasonable accommodations or be transferred to a facility that could accommodate his physical disability. *Id*. at 23.

In mid-July 2023, Mr. Thompson was reclassified and assigned to cell number 102 in DHU which was not handicap-accessible. *Id*. at 24. Several days later, Nurse Deanna

3

Laughlin went to Mr. Thompson's cell and took his assigned wheelchair from him. *Id*. He asserts this act was vindictive, retaliatory, and done without justification. *Id*. Nurse Laughlin told him she was taking his wheelchair because Assistant Warden Dawn Buss observed him on video footage in BHU out of his wheelchair. *Id*. at 24-25. He asserts, however, that the wheelchair was only prescribed for long distance transport. *Id*. at 25. Mr. Thompson filed a grievance about the incident, but received no relief and was denied access to the grievance appeal process. *Id*.

On August 2, 2023, Mr. Thompson sent a letter to Warden Neal and copies of the letter to Assistant Warden Buss, Unit Team Manager Bane, and ADA Coordinator Taylor informing them that he was a qualified individual with a disability and the Indiana Department of Correction was denying him access to reasonable accommodations for his physical disability. *Id*. He requested that he be transferred to a facility equipped to accommodate his disability. *Id*. On August 9, 2023, Mr. Thompson was released back to BHU where he was assigned to a cell that was not handicap-accessible. *Id*. at 25-26. He asserts that Unit Team Manager Joseph Schneider, who was in charge of managing BHU, and responsible for making reasonable accommodations for inmates with disabilities, failed to ensure that BHU met ADA and Rehabilitation Act standards. *Id*. at 26.

Mr. Thompson claims the defendants violated the ADA and Rehabilitation Act because they have not provided him with a handicap-accessible cell and shower at ISP and because they transported him in a van that did not accommodate his disability. *Id*. at 15-18. He avers they knew or should have known he is a qualified individual with a

4

physical disability who required reasonable accommodations. *Id*. Mr. Thompson has sued eight defendants and seeks monetary damages. *Id*. at 29-30.

Title II of the ADA provides that qualified individuals with disabilities may not "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. Prisons and correctional facilities are public entities within the purview of Title II. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). Officials can be sued under the ADA for declaratory and injunctive relief. *Radaszweski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 606 (7th Cir. 2004). When an inmate seeks monetary damages, the law favors replacing a prisoner's ADA claim with a parallel claim under the Rehabilitation Act, 29 U.S.C`. § 701, given the uncertainty about the availability of damages under Title II and because the relief available is "coextensive." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012).

Under the Rehabilitation Act, damages are available against a state that accepts federal assistance for prison operations, as all states do. *Id.* To state a claim under the Rehabilitation Act, a plaintiff must allege that (1) he is a qualified person (2) with a disability and (3) the defendant denied him access to a program, service, or activity or otherwise discriminated against him because of his disability.[1] *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). "Refusing to make reasonable accommodations is

---

[1] "[W]ith respect to this lawsuit, the analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons." *Jaros*, 684 F.3d at 670; *see also Conners v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021) (noting that the standards under the ADA and the Rehabilitation Act are the same except that under the Rehabilitation Act "the plaintiff's disability must be the *sole* reason for the alleged discriminatory action" while the ADA "requires only that [it] be *a* reason for the challenged action") (emphasis in original).

5

tantamount to denying access[.]" *Jaros*, 684 F.3d at 672 (citation omitted). Additionally, a plaintiff can establish intentional discrimination through a showing of deliberate indifference. *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 863 (7th Cir. 2018). In other words, discrimination occurs when the defendant knows that a violation of these rights is "substantially likely" yet fails to act. *Id.* (citation omitted). A claim under either the ADA or Rehabilitation Act cannot be brought against individual employees. Any claim under these statutes is a claim against the state agency itself.[2] *See Jaros*, 684 F.3d at 670. Therefore, Mr. Thompson may not proceed against the defendants pursuant to the ADA or Rehabilitation Act. However, because Mr. Thompson has been denied access to reasonable accommodations for his physical disability at ISP, he will be permitted to proceed against the Indiana Department of Correction, which is an arm of the State. *See Lembach v. Indiana*, 987 F. Supp. 1095, 1097 (N.D. Ind. 1997) ("the IDOC is an arm of the State of Indiana, since it is established as part of the executive branch of state government").

For these reasons, the court:

(1) GRANTS Jerry Thompson leave to proceed against the Indiana Department of Correction for compensatory and punitive damages for denying him reasonable

---

[2] It is unclear whether Mr. Thompson will need to demonstrate direct liability or whether respondeat superior applies. This issue has not yet been decided by the Seventh Circuit. *Ravenna v. Vill. of Skokie*, 388 F. Supp. 3d 999, 1005 (N.D. Ill. 2019) (holding that, to prevail, the plaintiff would need to show that an official with authority to take corrective action had actual knowledge of the alleged wrongdoing); *Royer v. City of Elkhart*, No. 3:22-CV-254 JD, 2022 WL 17600377, at *16 (N.D. Ind. Dec. 13, 2022) (requiring a showing of direct liability).

accommodations at ISP, in violation of the Americans with Disabilities Act and section 504 of the Rehabilitation Act;

(2) DISMISSES all other claims;

(3) DISMISSES Commissioner Christina Reagle, Warden Ron Neal, Assistant Warden Dawn Buss, Unit Team Manager Pamela Bane, Unit Team Manager Joseph Schneider, Nurse Deanna Laughlin, Jane Doe 1, and ADA Coordinator D. Taylor;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) the Indiana Department of Correction, with a copy of this order and the amended complaint (ECF 6); and

(5) ORDERS, under 42 U.S.C. § 1997e(g)(2), the Indiana Department of Correction to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

May 19, 2025    *s/ Damon R. Leichty*
                Judge, United States District Court